UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| KENNETH SMITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:17-CV-471 |
| | ) |
| KENNETH CUNNINGHAM and | ) |
| KAISER TRANSPORT, INC., | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER**

This matter is before the Court on the motion to dismiss filed by Defendants Kaiser Transport, Inc., and Kenneth Cunningham (ECF 4). The movants submitted a memorandum in support of their motion (ECF 5), Plaintiff Kenneth Smith filed a response in opposition to the motion (ECF 9), and Defendants filed a reply (ECF 10). Smith filed some additional documents that are relevant to the motion to dismiss, which are discussed below. These documents were filed several weeks after Smith filed his reply brief, the last one on January 4, 2018. The Defendants have not objected or otherwise responded to them, so this matter fully briefed and ripe for resolution. For the reasons discussed below, the motion is DENIED.

**DISCUSSION**

Kenneth Smith filed this lawsuit in the Circuit Court of Steuben County, Indiana, on January 23, 2017, alleging that Kaiser Transport and its employee, Kenneth Cunningham, are liable to him for personal injuries he suffered as a result of a motor vehicle accident that occurred on February 5, 2015. Complaint (ECF 6), p. 2. Smith and Cunningham were driving semi tractor-trailers at the time of the accident and Smith alleges that Cunningham was "acting within the

scope of his employment . . . with Kaiser Transport" when "he failed to see the Plaintiff's vehicle and caused a serious collision." *Id*., p. 2. Smith asserts that the accident was the result of Cunningham's negligence, which can be imputed to Kaiser under the doctrine of *respondeat superior*, so he sued both Defendants seeking compensation for his injuries. *Id*., generally.

Defendants Cunningham and Kaiser argue in their motion that this lawsuit should be dismissed because "[u]nder Indiana law, the plaintiff has wholly failed to properly serve the defendants. As a result, the Court has no personal jurisdiction over the defendants and the Court should dismiss the case pursuant to Ind. Trial Rule 12(B)(2), (4) and (5). In addition, the plaintiff has taken no action to prosecute his case for at least ten months after filing it. As a result, the Court should dismiss the case pursuant to Ind. Trial Rule 41(E) and Fed.R.Civ.P. 41(b)." Defendants' Memorandum, p. 3. In short, Cunningham and Kaiser argue that Smith has been dilatory in pursuing this litigation–having done almost nothing, they contend, since filing the case last year–and as a result should be prohibited from doing so. Smith's attorneys respond by stating that they used due diligence in trying to effectuate service on both Defendants and that any delay was the result of logistical issues or a possible misunderstanding between counsel. In any event, that is the issue: whether Smith was dilatory in pursuing this lawsuit due to his failure to serve summons on Defendants in a timely fashion and, if so, whether that dilatory conduct warrants dismissal of his lawsuit.

According to the Defendants, Smith failed to serve them with summons when he filed this suit in state court. Memorandum in Support, p. 1. They note that the state court docket "does not reflect that the plaintiff ever attempted to serve either defendant with the original summons and complaint." *Id*. (referencing ECF 5-1, Exh. A, Chronological Case Summary). When Smith

finally got around to attempting to serve Defendant Cunningham, which the Defendants claim he didn't do until August 3, 2017, the alias summons he filed indicated that it should be served at an address in Indianapolis. But while that summons was indeed left at the address by the Sheriff, the Defendants contend that "Mr. Cunningham has never resided at the [Indianapolis] address. . . . On the date of the accident and continuously up until the present day he has resided at the address listed on the police report, namely [in] Saint Paul, Nebraska. . . . As a result, Cunningham has never been served with the summons and complaint in this case." *Id*., p. 2 (referencing ECF 5-4, Exh. D, Affidavit of Kenneth Cunningham, and ECF 5-5, Exh. E, Police Report).[1] The Defendants argue that since "the complaint and summons were never properly served upon Cunningham . . . the Court never acquired personal jurisdiction over him such that the Court should dismiss the case against Cunningham pursuant to Ind. Trial Rule 12(B)(2), (4) and (5)." *Id*., p. 5.[2] The Defendants also argue that this Court should dismiss Smith's claims against Kaiser Transport–again for lack of personal jurisdiction–since "the docket does not reflect any attempt whatsoever to serve the summons and complaint upon Kaiser. In addition, Kaiser has no documentation that it was ever properly served. As a result, the Court never acquired personal

---

[1] The Defendants argue in their memorandum that the Sheriff's method of service was defective for other reasons, too, but it doesn't matter since it is undisputed that Cunningham had no connection to the Indianapolis address.

[2] The Defendants state that the Indiana Trial Rules apply since this case originated in state court and was pending there when service was attempted, so they seek to have it dismissed under Indiana Trial Rule 12(B) for lack of service and personal jurisdiction, and Indiana Trial Rule 41(E) for failure to prosecute. Memorandum in Support, pp. 2-3. The Defendants also cite Fed.R.Civ.P. 41(b), the federal version of the state rule, in support of their motion. This Court's decision on the motion to dismiss is the same regardless of which rules apply (and the Court will discuss both, given that Defendants rely on both), especially since Indiana Trial Rules 12(B) and 41(E) are mirror images of Federal Rules 12(b) and 41(b), both in terms of their purpose and their application.

3

jurisdiction over Kaiser such that the Court should dismiss the case against Kaiser[.]" *Id.*, pp. 5-6.

Finally, the Defendants argue that the case should be dismissed due to Smith's overall lack of diligence in pursuing it, of which his allegedly faulty and untimely attempts at service are just examples. The Defendants contend that "[t]he plaintiff not only failed to comply with the Indiana Rules of Trial Procedure by failing to properly serve the defendants, the plaintiff also took no action whatsoever to prosecute the case for at least 10 months thereafter. Under these circumstances, the Court should dismiss the case pursuant to Ind. Trial Rule 41(E) and Fed.R.Civ.P. 41(b)." *Id.*, p. 6.

The Defendants' arguments appear pretty solid standing alone, especially since Smith concedes that there were problems with service of process. But Smith counters those arguments by stating that he attempted to effectuate service of process on both Defendants by way of certified mail sent just four days after the case was originally filed. Plaintiff's Brief in Opposition, pp. 1-2 (referencing ECF 9-2, Exh. B, Copies of Summons, and Exh. C, Certified Mail to Kenneth Cunningham). Furthermore, those original summons both contained proper addresses for both Defendants, including Cunningham's address in St. Paul, Nebraska. *Id.* So what went wrong? According to Smith, the problem began with the U.S. Postal Service:

> Plaintiff's counsel checked the status of service on March 15, 2017, April 17, 2017, and June 20, 2017, by monitoring the USPS tracking online page for both defendants, however, they continued to say, "in transit." (*See* Ex. C. and D.) On June 20, 2017, Plaintiff's attorney performed a background check on defendant Kenneth Cunningham which revealed another possible address . . . [in] Indianapolis, Indiana, in addition to the . . . St. Paul, Nebraska address. (Attached as Ex. E.) Upon belief that defendant Cunningham may have moved, Plaintiff issued an alias summons for service by Sheriff. (Attached as Ex. F.)

4

*Id.*, p. 2. The exhibits to which Smith refers, which support his factual assertions, include a USPS Tracking form dated February 2, 2017, indicating that certified mail sent to Kenneth Cunningham was "in transit" (ECF 9-3, Exh. C); a USPS Tracking form dated March 8, 2017, indicating that certified mail sent to Kaiser Transport was "in transit" (ECF 9-4, Exh. D); and a copy of the results of an online "background check" on Kenneth Cunningham that lists a "possible address" for him in Indianapolis (ECF 9-5, Exh. E). If Smith's counsel did anything more to investigate the curious, months-long delay in the delivery of two certified mail items other than check on them online three times over the span of six months (from the time they were posted on January 27 until counsel took further action on June 20) he doesn't share that. Anyway, Smith's counsel represents that on June 20 he discovered the possible alternative address for Cunningham in Indianapolis after "perform[ing] a background check on defendant Kenneth Cunningham[.]" *Id.*, p. 2. Plaintiff explains that "[u]pon belief that defendant Cunningham may have moved, Plaintiff issued an alias summons for service by Sheriff[]" at the Indianapolis address. *Id.* (referencing ECF 9-6, Exh. F, Alias Summons). About six weeks after this discovery, a delay that also goes unexplained, counsel "attempted to serve Mr. Cunningham by Sheriff on August 3, 2017." *Id.*, p. 3. That attempt, of course, was for naught.

About three more weeks went by until, according to the Plaintiff, the following email communications were exchanged:

> On August 18, 2017, Plaintiff's counsel received electronic communication from Michael Terwilliger indicating he would be representing defendants and requesting a copy of the Complaint along with Plaintiff's medical bills and records. Plaintiff's counsel's paralegal responded on August 21, 2017, that service was still being attempted by Sheriff on [Cunningham] and a file-stamped copy of the Complaint, along with Plaintiff's medical bills and records were provided to Mr. Terwilliger. On August 30, Mr. Terwilliger responded by requesting proof of

5

> service from the Sheriff so that he could appear for [Cunningham]. . . . On
> November 13, 2017, Plaintiff's counsel received notice of defendants' application
> to remove this matter from the Steuben Circuit Court to this Court.

*Id*. Plaintiff attaches a copy of these email communications, which confirm his factual recitation. *Id*. (ECF 9-7, Exh. G, Email Communications). Indeed, as Plaintiff represents, the August 18 email Mr. Terwilliger sent to Plaintiff's counsel states that "we were retained to represent Kaiser Transport and its driver, Kenneth Cunningham[.]" *Id*., ECF 9-7, p. 3. The email then requests proof of service on Cunningham and states that "service has [not] yet been returned on Kaiser Transport." *Id*. At this point in time, then, the Defendants were aware of the lawsuit, had retained counsel, and were waiting for "proof of service . . . so that we may appear and file the appropriate responsive pleading." *Id*. There is no indication that Plaintiff's counsel did anything between the issuance of the faulty Indianapolis summons on August 3 and the filing of the Defendants' notice of removal on November 13, 2017, with the exception of conducting an online "background check" on Cunningham. As explained in the Plaintiff's brief, "[o]n October 20, 2017, Plaintiff's counsel checked the status of service on [Cunningham] and noted it had been left at his dwelling place. Being uncertain as to whether the . . . Indianapolis [address] was [Cunningham's] correct address, Plaintiff's counsel requested a subsequent background check. Thereafter, this case was removed to this Court and defense [sic] filed a Motion to Dismiss." *Id*., p. 4. Plaintiff's counsel also maintains that he "was mistakenly under the impression from th[e] email [communications] that Mr. Terwilliger had either acquiesced that defendant Kaiser Transport had been served and/or he would be accepting service on Kaiser's behalf." *Id*., p. 3. Counsel contends that he "mistakenly believed that defense counsel had accepted service for Kaiser Transport and was merely waiting on service [on Cunningham]." *Id*., p. 4.

6

Lastly, on December 19, 2017, Plaintiff filed new summons forms in this Court. (ECF 13), Summons to Kenneth Cunningham; (ECF 14), Summons to Kaiser Transport, Inc. Smith's counsel filed an affidavit on January 4, 2018 (ECF 16), in which he indicates that he properly served Kaiser Transport, Inc., on December 26, 2017. Affidavit of Service (ECF 16); Signed Return Receipt (ECF 16-1). But even if the problem of lack of formal service of process has been cured and the Court has jurisdiction over both Cunningham and Kaiser, the Defendants' argue that the Plaintiff has been *so* dilatory, and they as a result have been *so* harmed, that it would be unjust to allow the case to proceed.

Smith counters that this case should not be dismissed for lack of prosecution under Indiana Trial Rule 41(E) (or its federal counterpart) because "Plaintiff has routinely monitored and continues to take action on this case since it was filed. Mindful of Ind. Trial Rule 41(E), counsel for Plaintiff have routinely monitored this case in an effort to comply." *Id*.

Indiana Trial Rule 41(E) states as follows:

> Whenever there has been a failure to comply with these rules or when no action has been taken in a civil case for a period of sixty [60] days, the court, on motion of a party or on its own motion shall order a hearing for the purpose of dismissing such case. The court shall enter an order of dismissal at plaintiff's costs if the plaintiff shall not show sufficient cause at or before such hearing. Dismissal may be withheld or reinstatement of dismissal may be made subject to the condition that the plaintiff comply with these rules and diligently prosecute the action and upon such terms that the court in its discretion determines to be necessary to assure such diligent prosecution.

Ind. Trial Rule 41(E). Indiana courts have explained the purpose and applicability of the rule as follows:

> The purpose of Trial Rule 41(E) is "'to ensure that plaintiffs will diligently pursue their claims'" and to provide "'an enforcement mechanism whereby a defendant, or the court, can force a recalcitrant plaintiff to push his case to resolution.'"

> *Belcaster v. Miller*, 785 N.E.2d 1164, 1167 (Ind.Ct.App. 2003) (quoting *Benton v. Moore*, 622 N.E.2d 1002, 1006 (Ind.Ct.App. 1993)), trans. denied. "'The burden of moving the litigation is upon the plaintiff, not the court. It is not the duty of the trial court to contact counsel and urge or require him to go to trial, even though it would be within the court's power to do so.'" *Id.* (quoting *Benton*, 622 N.E.2d at 1006). "'Courts cannot be asked to carry cases on their dockets indefinitely and the rights of the adverse party should also be considered. [The adverse party] should not be left with a lawsuit hanging over his [or her] head indefinitely.'" *Id*. (quoting *Hill v. Duckworth*, 679 N.E.2d 938, 939-40 (Ind.Ct.App. 1997)). "Although Indiana does not require trial courts to impose lesser sanctions before applying the ultimate sanctions of default judgment or dismissal, we view dismissals with disfavor, and dismissals are considered extreme remedies that should be granted only under limited circumstances." *Am. Family Ins*., 929 N.E.2d at 857.

*Caruthers v. State*, 58 N.E.3d 207, 210-11 (Ind.Ct.App. 2016). The federal version of this rule states:

> If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision . . . operates as an adjudication on the merits.

Fed.R.Civ.P. 41(b). This Court has explained the purpose and applicability of this rule as follows:

> The Seventh Circuit has listed several factors district courts should consider before dismissing a case under Rule 41(b):
>
> 1) whether the wrongdoer (or her counsel) received "due warning" that such a sanction was a possibility; 2) the frequency and magnitude of the wrongdoer's failure to comply with deadlines and other court orders; 3) the efficacy of less severe sanctions; 4) whether the misconduct prejudiced the other party or other litigants on the court's docket; and 5) the likely merits of the wrongdoer's case.

*Yaodi Hu v. Amtrak U.S.A.*, 2015 WL 5772383, at *2-3 (N.D. Ind. Sept. 30, 2015) (citing *Ali v. Calumet Medical Center, Inc*., 2015 WL 1543589 (E.D. Wisc. April 7, 2015)) (additional citations omitted).

The purpose of both rules is to ensure that cases are prosecuted with diligence and both bestow broad discretion on the presiding court to fashion remedies to achieve that goal. *See, e.g.*, *Am. Family Ins. Co. ex rel. Shafer v. Beazer Homes Indiana, LLP*, 929 N.E.2d 853, 857 (Ind.Ct.App. 2010) (trial court's decision whether to dismiss under Rule 41(E) will be reversed only for abuse of discretion); *Whitt v. AW Holdings LLC*, 2014 WL 1365431, at *1 (N.D. Ind. Apr. 7, 2014) (quoting *Gabriel v. Hamlin*, 514 F.3d 734, 736-37 (7th Cir. 2008)) ("court has discretion to dismiss an action for failure to prosecute 'when there is a clear record of delay or contumacious conduct, or when other less drastic sanctions have proven unavailing.'").

The Court concludes that Plaintiff's counsel has, so far, handled matters far *too* "routinely," and that lack of diligence is exactly the hook on which the Defendants hang their hat in their reply brief. As they argue it: "With respect to the plaintiff's failure to prosecute, the plaintiff does not contest the fact that the Indianapolis address . . . was incorrect. As a result, the state court docket reflects that, since filing his complaint on January 23, 2017, the plaintiff has taken no action to *properly* serve the defendants to issue discovery, ask for a trial date or take any other action to prosecute his case." Defendants' Reply (ECF 10), p. 2 (italics added). Finally, the Defendants contend that they "have been prejudiced by the plaintiff's actions. The nearly year-long delay prevented the defendants from engaging in both written and oral discovery of the plaintiff and his medical providers. Because the defendants were prevented from timely conducting discovery, memories have faded and critical evidence may have been lost that was supportive of defendants' affirmative defenses such as the failure to mitigate damages. Under these circumstances, the plaintiff's failure to preserve his rights is simply inexcusable." *Id.*, p. 3.

Plaintiff's explanation for the delays in getting this case off the launch pad are lame, but Defendants' assertion that they have been unduly (maybe even fatally) prejudiced by the 10-month delay is overly dramatic. The Court agrees that Plaintiff failed to demonstrate diligence in formally serving his lawsuit on Defendants. And given the long, unexplained gaps in time during which Plaintiff's counsel did little or nothing to cure the problems with service and move this case along, that lack of diligence can be fairly characterized as sloppy at best and neglectful at worst. At the same time, the Defendants' outrage exceeds the gravity of the Plaintiff's inattentiveness; and the remedy they seek–outright dismissal of this lawsuit–far exceeds any hypothetical prejudice they might suffer from "faded memories" and "lost evidence." More importantly, any impediments to discovery or concerns about the efficient litigation of this case will be eliminated immediately. This case is already scheduled for a telephonic status conference on March 8, 2018, before Magistrate Judge Susan Collins.[3] Furthermore, this Court's required pretrial procedures and filing deadlines, all of which will be set out at the Rule 16 preliminary pretrial conference and later in the Court's Order Controlling the Case, will ensure that this case is litigated promptly and efficiently. The Court will not tolerate lack of diligence by any litigant and is confident that this will not be an issue moving forward. For these reasons, the Court

---

[3] The docket indicates that this conference on March 8, 2018, was scheduled as a "telephonic status conference" but that it would "be converted to a Rule 16 Preliminary Pretrial Conference, if necessary, after ruling on [the Defendants'] Motion to Dismiss." Minute Entry (ECF 12). Given the Court's denial of the motion to dismiss, the case will proceed next to the status conference before Magistrate Judge Collins, who in her discretion may convert it to a Rule 16 conference. (Ironically, the March 8 hearing date is a continuation of a telephonic status conference scheduled on January 25, 2018, but which Judge Collins was unable to conduct on that date "[d]ue to the Court's inability to reach Attorney Michael Terwilliger[.]")

concludes that dismissal of this lawsuit is too harsh a remedy for the Plaintiff's lack of diligence and that this admonition will be sufficient to get this train back on the track and moving forward.

## CONCLUSION

For the reasons set forth above, the Defendants' Motion to Dismiss (ECF 4) is DENIED.

Date: February 15, 2018.

/s/ William C. Lee
William C. Lee, Judge
U.S. District Court
Northern District of Indiana
